Hon. John Van Lindt Chairman Racing and Wagering Board
This is in response to your counsel's request for an opinion as to the legality of transmitting audio and visual signals of New York horse races to licensed Bermuda betting facilities.
According to counsel's letter, the Racing and Wagering Board recently received a request from a racing association for permission to simulcast its horse races via satellite from its facilities within the State of New York to a licensed racing and sports betting concern in Hamilton, Bermuda. Federal anti-gambling legislation passed during the Kennedy administration places broad restrictions on the transmittal of gambling and wagering information (18 U.S.C. § 1084). The prohibition, although broad, is not without exception. Subdivision b of section 1084 allows transmission from a "State" in which such betting is legal into another "State" in which it is legal. The term "State" is not defined for purposes of this section. Your question is whether this exception for interstate transmission of legal gambling information applies to transmission from a state to a location outside the United States.*
The prohibitive language of 18 U.S.C. § 1084 is contained in subdivision (a) which reads as follows:
 "Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sports event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both" ( 18 U.S.C. § 1084[a]).
This subdivision prohibits the transmittal of gambling information in both "interstate" and "foreign" commerce.
Subdivision b provides for the exceptions to the general prohibition contained in subsection (a):
 "Nothing in this section shall be construed to prevent the transmission in interstate or foreign commerce of information for use in news reporting of sporting events or contests, or for the transmission of information assisting in the placing of bets or wagers on a sporting event or contest from a State where betting on that sporting event or contest is legal into a State in which such betting is legal."
Notably, this subsection allows for the transmission both in "interstate" and "foreign" commerce of information for use in news reporting of sporting events. With regard to the transmission of information assisting in legal gambling, however, the statute allows only transmissions in interstate commerce.
Bermuda, although not a foreign country, has the status of a British dependency (Bermuda Constitution Act, 1967, Constitutions of Dependencies and Special Sovereignties, pp 1-4; see Connell v Vermilya-Brown, Inc.,164 F.2d 924, 926 [2d Cir, 1947]; Matter of Penn Mut. Life Ins. Co. vSuperintendent, 104 Misc.2d 1092, 1094 [Sup Ct, N Y Co, 1980]) and is outside the jurisdiction of the United States.
The legislative history of section 1084 indicates that the drafters of the statute used the term "State" to refer only to a member state of the United States of America. A legislative report prepared in connection with section 1084 specifically discusses the interstate legalized gambling exemption found in subdivision (b):
 "Phrased differently, the transmission of gambling information on a horserace from a state where betting on that horserace is legal to a state where betting on the same horserace is legal is not within the prohibitions of the bill. Since Nevada is the only State which has legalized off-track betting, this exemption will only be applicable to it" (House Report No. 167, August 17, 1961; emphasis supplied).
Construction of the term "State" is also aided by the history of subdivision (c) of section 1084, which reads as follows:
 "Nothing contained in this section shall create immunity from criminal prosecution under any laws of any State, Commonwealth of Puerto Rico, territory, possession, or the District of Columbia".
Originally, the exception did not mention Puerto Rico. It was added by amendment, which is discussed in the House Report on section 1084:
 "Amendment No. 2 adds the Commonwealth of Puerto Rico, which is not encompassed by the wording in subsection (c) since it is neither a State, territory, nor possession, in order to insure that it will be included within the scope of that subsection, the purpose of which makes certain that the area encompassed by the bill is not preempted by the Federal Government" (House Report No. 167, August 17, 1961).
Thus, the legislative history indicates an intent that the exception applies only to transmission to a member state of the United States of America and not to foreign transmission.
In U.S. v Baker (364 F.2d 107 [3d Cir, 1966]), the Court interpreted a similar anti-gambling statute, 18 U.S.C. § 1953, which prohibits the transportation "in interstate or foreign commerce" of wagering paraphernalia. At the time of Baker, section 1953 contained an exception for
 "the transportation of betting materials to be used in the placing of bets or wagers on a sporting event into a State in which such betting is legal under the statute of the State * * *"
The issue in Baker was whether this exception applied to a defendant who transported gambling paraphernalia to the Republic of Haiti. The Court found that the word "State" refers only to member states of the United States, and concluded that the shipments to Haiti violated the statute (364 F.2d at 110). Eventually, section 1953 was amended to extend the exception to include
 "the transportation in foreign commerce to a destination in a foreign country of equipment, tickets or materials to be used within that foreign country in a lottery which is authorized by the laws of that foreign country" (18 U.S.C. § 1953[b]; Pub L 96-90, § 2[1]).
In the absence of a comparable exception in section 1084, the transmittal of gambling information to a foreign nation would be prohibited by section 1084.
Accordingly, we conclude that the transmission of audio and visual signals of New York horse races to betting facilities located in Bermuda is prohibited by 18 U.S.C. § 1084.
* Counsel's letter indicates that a prior inquiry as to section 1084's interpretation was made to the United States' Attorney General's office. That office declined to render any opinion, but noted in its purely advisory response:
 "It would seem that some resort to legislative history to determine whether the term `State' embraces a foreign country would be appropriate. We have never been called upon to make a determination in this context, so there is little guidance we can give you in that regard" (Letter of John C. Kenney, U.S. Attorney General's Office to David B. Vaughn, Counsel, New York State Racing and Wagering Board, January 17, 1985).